**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| TODD ROBBEN, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | 3:10-cv-00722-RCJ-VPC |
| vs. | ) | |
| | ) | |
| DINO DICIANNO, | ) | **ORDER** |
| | ) | |
|       Defendant. | ) | |

This case arises out of the termination of a state employee. Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 5). For the reasons given herein, the Court grants the motion in part and dismisses the remainder of the case for lack of subject matter jurisdiction.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Todd Robben and Defendant Dino Dicianno were coworkers at the Nevada Department of Taxation ("NDOT") in Carson City until Plaintiff was terminated. Plaintiff alleges Defendant purposefully tainted his termination appeal hearing by obtaining protective orders against him through perjury.

Plaintiff previously sued NDOT, Vincent Cherpeski, and Dicianno on September 8, 2009 on three causes of action related to alleged harassment in the workplace: (1) intentional interference with contractual relations; (2) Title VII violations; and (3) First Amendment

violations pursuant to 42 U.S.C. § 1983. (*See* Second Am. Compl., Oct. 16, 2009, ECF No. 5-2, Case No. 3:09-cv-00523-LRH-RAM). The gravamen of that action appears to have been that Plaintiff didn't get along with certain coworkers and believed his disputes with them rose to the level of common law or statutory torts. That action was dismissed pursuant to Plaintiff's acceptance of an offer of judgment of $7500 on June 29, 2010. (*See* J., July 8, 2010, ECF No. 34, Case No. 3:09-cv-00523-LRH-RAM).

Plaintiff has now sued Dicianno based on events that occurred during the pendency of his first case and after dismissal. Defendant claims that in the summer of 2009, Plaintiff engaged in a "campaign of intimidation and bullying of his coworkers and other State employees with repeated threats of lawsuits when demands he made were not met and when he was coached regarding his conduct and performance deficiencies," including sending more than seventy emails from his State email account to Nevada Department of Personnel employees. (Mot. Summ. J. 1:28–2:6, Dec. 28, 2010, ECF No. 5). Defendant also alleges Plaintiff engaged in a series of unauthorized access of computer systems, including the sabotage and theft of data. (*See id.* 2–3).

On June 30, 2009, Heidi Nelson, M.D., the doctor treating Plaintiff for a worker's compensation claim, reported that Plaintiff denied being suicidal or homicidal, although he had told a nurse he was "homicidal." (*See* Medical Report 2, June 30, 2009, ECF No. 5-1, at 4). Plaintiff was "agitated" and "manic" during the examination and used "violent imagery" when explaining his feelings about his employer, comparing his perception of his treatment by his employer to rape and murder. (*Id.*). He denied an intent to actually hurt anyone. (*Id.*). When he became "increasingly agitated," Dr. Nelson determined to send him to the hospital for "urgent mental health evaluation," but Plaintiff "became very angry" and left. (*Id.*). Dr. Nelson called the police and gave them his license plate number. (*Id.*). Plaintiff also made threatening postings on the Internet, including a September 16, 2009 posting warning the defendants in the first action

that "I see you too along with my friends Smith and Wesson." (Mot. Summ. J. 5–6).

On September 17, 2009, Dicianno obtained an ex parte, one-month temporary order of protection ("TOP") against Plaintiff in the Carson Township Justice Court. (*See* TOP, Sept. 17, 2009, ECF No. 5-1, at 8). The TOP required Plaintiff to stay away from his workplace at NDOT. (*See id.*). Dicianno obtained a one-year extended order of protection ("EOP") on October 16, 2009. (*See* EOP, Oct. 16, 2009, ECF No. 5-1, at 13). On October 15, 2010, Dicianno obtained a new TOP. (*See* TOP, Oct. 15, 2010, ECF No. 5-2, at 2). Dicianno obtained a new EOP on November 1, 2010. (*See* EOP, Nov. 1, 2010, ECF No. 5-2, at 8). That EOP apparently remains in effect.

Plaintiff alleges that Dicianno obtained the latest protective orders "with the improper purpose of interfering with Plaintiff's due process right to appeal his termination, and to punish Plaintiff for successfully prosecuting a civil rights case to judgment . . . ." (Compl. ¶ 5, Nov. 18, 2010, ECF No. 1). Plaintiff alleges Defendant knew that the restraining order would make it impossible for the hearing officer reviewing Plaintiff's termination to reinstate him if there were a protective order preventing him from entering his workplace. (*See id.* ¶ 6). Plaintiff sued Defendant in this Court on two causes of action: (1) First Amendment right to petition violations under 42 U.S.C. § 1983; and (2) abuse of process.

## II.   SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary

judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and

determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   ANALYSIS

Plaintiff alleges Dicianno obtained the latest protective orders against him based on his own perjured testimony, and that he obtained the orders not because he legitimately feared Plaintiff, but in order to prevent him from being rehired after termination. This is an abuse of process claim, the elements of which are "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002). He has also alleged a procedural due process claim.

The § 1983 claim fails as a matter of law. Procedural due process requires notice and an opportunity to be heard either before or after the deprivation of a protected property or liberty interest. *See, e.g.*, *Buckingham v. Sec'y of the U.S. Dep't of Agric.*, 603 F.3d 1073, 1082–83 (9th Cir. 2010). In determining what procedures are required and when, a court balances "(1) the private interest that will be affected by the action, (2) the risk of an erroneous deprivation of that interest through the procedures used and the value of additional or alternative safeguards, and (3) the government's interest, including the additional costs and administrative burdens that additional procedures would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Plaintiff does not allege that the hearing officer at his termination appeal hearing failed to give him notice or a procedurally sufficient hearing. He alleges only that the substance of the hearing was tainted by the Justice Court's order of protection against him. In fact, Plaintiff has not sued, or even named, the hearing officer. He has sued only a coworker—who was perhaps a direct supervisor, although this is unclear from the Complaint—who is not alleged to have been in charge of the hearing or to have affected the procedures used at the hearing, but only to have

collaterally affected the substantive result of the hearing through improper actions. These facts do not support a procedural due process claim, and the Court grants summary judgment as a matter of law on that claim.

The Court declines to exercise supplemental jurisdiction over the abuse of process claim. Although the Court has discretion to hear that claim because it has original jurisdiction over the § 1983 claim, *see id.* § 1367(a), the federal claim is so clearly insufficient that the state law claim is in reality the only claim presented, so supplemental jurisdiction is inappropriate, *see id.* § 1367(c).

Defendant also argues that the Court lacks jurisdiction outright under the *Rooker-Feldman* doctrine, because a decision would essentially amount to an appeal of the protective orders from the Justice Court. Although Plaintiff believes the Justice Court should not have issued protective orders against him, the proper adjudication of an abuse of process claim need not necessarily affect such an order or imply its incorrectness. Unlike a malicious prosecution claim, an abuse of process claim does not require malice or lack of probable cause. *See LaMantia*, 38 P.3d at 879 ("Malice, want of probable cause, and termination in favor of the person initiating or instituting proceedings are not necessary elements for a prima facie abuse of process claim."). Plaintiff need only prove that Defendant misused the legal process in the Justice Court with an improper motive apart from obtaining a protective order. In other words, insofar as Plaintiff complains of the alleged perjury used to obtain the protective orders against him, *Rooker-Feldman* bars the action; however, it is possible that an abuse of process action could be sustained if based upon the misuse of legal process, e.g., a subpoena having a deleterious effect on Plaintiff, if that alleged misuse of the legal process had nothing to do with the substance of the state court judgment. The problem with the Complaint is that it alleges no such abuse of process. Plaintiff complains only of Defendant's alleged perjury in obtaining the judgment against him, and the claim is therefore barred by *Rooker-Feldman* because it touches

the substance of the state court's adjudication.[1]  Plaintiff makes no claim such as "Defendant subpoenaed me to appear in the Justice Court on the date of my appeal hearing for the purpose of causing the hearing to be postponed . . . ."  Such an allegation might support an abuse of process action without running afoul of *Rooker-Feldman*, but Plaintiff makes no such claim.

Finally, Defendant argues sovereign immunity and claim preclusion.  First, the Eleventh Amendment bars the action against Defendant in his official capacity, but not in his individual capacity.  Second, the claim is not precluded, because the first action did not concern the issuance of the second EOP.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 5) is GRANTED in part as to the § 1983 claim.

IT IS FURTHER ORDERED that the case is dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Dated:  This 30th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge

---

[1] The Court's adjudication of a claim of perjury would undermine the state court's prior determination of the issue to which the allegedly false testimony related.  Plaintiff's remedy at this stage is to file a motion in the Justice Court for relief from judgment on the basis of fraud.  *See* Nev. R. Civ. P. 60(b)(3).  If he wins such a motion, he may then have a viable abuse of process claim in state court.